Ruby **GLOVER** (formerly Ruby Andrews), Trustee of the Marilyn Brachman Trust, et al.

v.

**UNITED STATES of America.**

**CA 4–1014.**

United States District Court,
N. D. Texas,
Fort Worth Division.
May 15, 1972.

McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, by Robert S. Newkirk, Fort Worth, Tex., for plaintiffs.

John O. Jones, Dept. of Justice, Fort Worth, Tex., Eldon B. Mahon, U. S. Atty., by Wm. L. Johnson, Jr., Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION

BREWSTER, Chief Judge.

The seven suits for refund of federal income taxes listed in this paragraph under their original case numbers arose from the same transaction and involve the same question of law. The facts are stipulated. By consent of the parties, all of the cases have been consolidated for trial under docket number, CA 4–1014, and style, Ruby Glover (formerly Ruby Andrews), Trustee of the Marilyn Brachman Trust, et al. v. United States of America. The seven cases are CA 4–1015, Ruby Glover (formerly Ruby Andrews), Trustee of the Malcolm Brachman Trust, et al. v. United States of America; CA 4–1016, Malcolm K. Brachman, et ux. v. United States of America; CA 4–1017, Malcolm K. Brachman v. United States of America; CA 4–1018, Minda Brachman v. United States of America; CA 4–1235, Milton Lurie, et ux. v. United States of America; CA 4–1236, Herman M. Lurie, et ux. v. United States of America; and the one filed first, CA 4–1014, Ruby Glover (formerly Ruby Andrews), Trustee of the Marilyn Brachman Trust, et al. v. United States of America.

The alleged deficiencies of income taxes arose from what is known as an ABC oil and gas transaction involving (1) the plaintiffs, as purchasers of undivided interests totalling fifty per cent of the working interest in a lease on oil and gas producing properties, (2) G. E. Kadane & Sons, a partnership, the seller of such interests, and (3) Fort Worth Enterprises, Inc., a Texas Corporation, the third party purchaser from G. E. Kadane & Sons of the production payment reserved by them out of the working interest sold to the plaintiffs.

An ABC transaction is a method of financing the purchase of oil and gas producing properties. The owner (G. E. Kadane & Sons) sells a portion or all of the leasehold working interest in mineral properties to a purchaser (plaintiffs herein). The owner reserves a production payment equal to a certain amount of money payable solely out of a percentage of the minerals produced from the interest assigned to the purchaser. The owner simultaneously sells the production payment to a third party (Fort Worth Enterprises, Inc.) for cash. The third party finances the purchase of the production payment with money obtained through a loan secured by a deed of trust and mortgage on the production payment and sometimes an assignment of the income accruing to such payment. The income tax results of such a transaction are that the purchaser (plaintiffs herein) reports the income actually accruing to him from the working interest, and the third party (Fort Worth Enterprises, Inc.) reports the income accruing to the production payment.

The only question involved in each of these cases is the validity for federal income tax purposes of the so-called ABC transaction. The decision of that question will turn on the determination of whether Fort Worth Enterprises, Inc., had a true economic interest in the production payment it purchased from G. E. Kadane & Sons. The Commissioner contends that the nature of the ABC transaction was altered and that Fort Worth Enterprises, Inc., owned no true economic interest in the production payment because of take-out letters furnished by S. Brachman to the Republic National Bank of Dallas in effect guaranteeing a substantial part of the loan by the bank to Fort Worth Enterprises, Inc., to provide money for the purchase of the production payment from G. E.

Kadane & Sons. The relationship of S. Brachman to the plaintiffs and to the various phases of the transaction appears later in the factual summary.

Effective March 1, 1959, plaintiffs purchased an undivided one-half interest in the working interest in the Lutcher-Moore and Lutcher-Moore "B" oil, gas and mineral leases in Orange County, Texas, from G. E. Kadane & Sons, a partnership, located in Wichita Falls, in the following proportions:

| | |
|---|---|
| Malcolm Brachman | ⅛ interest |
| Malcolm Brachman Trust | 5⁄16 interest |
| Marilyn Brachman Hoff- | |
| man Trust | 5⁄16 interest |
| Milton Lurie | ⅛ interest |
| Herman M. Lurie | ⅛ interest |

G. E. Kadane & Sons retained 80% of the oil, gas and other minerals in the properties so sold until G. E. Kadane & Sons received from the proceeds of the sale of oil, gas and other minerals attributable to such reserved estate, the primary sum of $750,000.00 plus 6% per annum on the monthly unpaid balance of said primary sum, and any and all other sums paid by G. E. Kadane & Sons as ad valorem or other taxes. That reservation was in the form of a production payment. At the time of the conveyances to the plaintiffs, G. E. Kadane & Sons retained no title or interest in any of the equipment on the leases, nor did it retain any other interest of any type except that which was payable solely out of the oil and gas produced on such leases.

On February 27, 1959, simultaneously with said conveyance by G. E. Kadane & Sons to plaintiffs and the reservation of the production payment, G. E. Kadane & Sons sold the production payment to Fort Worth Enterprises, Inc., for $750,-000.00 cash. That money was obtained by Fort Worth Enterprises, Inc. through a loan of $750,000.00 at the Republic National Bank of Dallas, Texas, with interest at the rate of 6% per annum. The loan was evidenced by a negotiable note secured by a deed of trust naming T. J. Maroney, Trustee, and granting a first lien to the bank upon the reserved production payment. The runs attributable to such production payment were also assigned to the bank as security for the note. As the indebtedness of Fort Worth Enterprises, Inc., to the Republic National Bank of Dallas, Texas, was reduced, the original note was renewed from time to time by subsequent negotiable notes as follows: $641,432.82 executed February 15, 1960, bearing 6% per annum interest; $465,631.37 executed February 15, 1961, bearing 5% interest per annum; $314,905.82 executed December 20, 1961, bearing 5% interest per annum; and $97,307.56 executed November 21, 1962, bearing 5% interest per annum. All of such renewal notes were secured by the same deed of trust and assignment described above. The full amounts of the production payment sold to Fort Worth Enterprises, Inc., and of the loan at the Republic National Bank were paid solely out of the oil and gas reserved.

Fort Worth Enterprises, Inc., was a Texas corporation with its principal office in Fort Worth, Texas. At all times during the years involved, all of the issued and outstanding stock of said corporation was owned by the law partnership of McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, located in Fort Worth, Texas.

Malcolm Brachman and Marilyn Brachman Hoffman are brother and sister. Milton and Herman Lurie are brothers, and are third cousins of Malcolm Brachman and Marilyn Brachman Hoffman. The Marilyn Brachman Trust and the Malcolm Brachman Trust were created July 16, 1936, by and between S. Brachman and wife, Etta K. Brachman, Settlors, and Ruby Andrews, as Trustee. S. Brachman and wife, Etta K. Brachman, are the parents of Malcolm Brachman and Marilyn Brachman Hoffman. Malcolm Brachman was the sole beneficiary of the Malcolm Brachman Trust. Marilyn Brachman was the sole beneficiary of the Marilyn Brachman Trust which terminated January 31, 1962; and, upon its termination, all of its assets were distributed to her. Both of these trusts were validly created and constituted legitimate taxable entities.

Prior to March 1, 1959, plaintiffs, along with S. Brachman, owned an interest in one-half of the working interest in the Lutcher-Moore and Lutcher-Moore "B" oil, gas and mineral leases above described, and G. E. Kadane & Sons owned the other one-half interest. It is stipulated that S. Brachman did not purchase any interest in, nor was he a party to, the transaction wherein plaintiffs purchased the undivided one-half of the working interest from G. E. Kadane & Sons.

Fort Worth Enterprises, Inc., was solvent at all times relevant to these cases, and the oil and gas production involved was exceptionally good.[1] However, the Republic National Bank insisted on a take-out letter to protect it against any unanticipated adversity in the transaction. On February 27, 1959, S. Brachman furnished the bank with such a letter, which provided that he would find a third party to purchase the promissory note of Fort Worth Enterprises, Inc., from the bank for the amount of the unpaid balance on the principal plus accrued interest as of the date of the purchase if the principal balance of the note had not been reduced by $260,000.00, or more, within 12 months from February 27, 1959. The agreement set out in the letter contained the following additional conditions:

(a) If the reduction on the principal within 12 months from February 27, 1959, should not amount to $260,000.00, or more, the third party would be obligated to purchase only a non-recourse participation in such note in an amount equal to $490,000.00.

(b) If the amount of the principal balance plus accrued interest should be less than $490,000.00 at the date of the purchase of the note by the third party, the purchaser would be entitled to the entire security then held by the bank for the loan.

(c) If the amount of the principal balance plus accrued interest should be in excess of $490,000.00 at the date of such purchase, the $490,000.00 participation purchased by the third party would have a secondary position in the production payment subject and inferior to the security position of the bank.

On September 9, 1960, another take-out letter was written by S. Brachman to said bank with similar provisions which required S. Brachman to find a third party purchaser of the note but reduced the amount to $375,000.00. On December 20, 1961, a similar letter was written requiring S. Brachman to find a third party purchaser to purchase said note, such obligation being reduced to an amount not to exceed $100,000.00. The parties have stipulated that such letters were binding legal obligations upon S. Brachman.

On May 1, 1963, the last promissory note of Fort Worth Enterprises, Inc., above described was satisfied and the Republic National Bank of Dallas executed a release of lien on the production payment.

Fort Worth Enterprises, Inc., included in its taxable income all of the income attributable to the reserved estate; and plaintiffs, upon the filing of their tax returns, did not report any of such income. Each of the parties timely filed his or her income tax returns for the respective years in question and timely paid the amounts shown thereon. Upon the examination of the returns of the individuals and trusts involved in these suits, the Commissioner of Internal Revenue determined that the income attributable to the reserved estate should be included in the taxable income of plaintiffs in proportion to their respective interests; and that deficiencies in tax and interest existed with respect to each of the returns for the pertinent years. The deficiencies in tax and interest were timely assessed against and paid by each of the respective individuals and trusts as set forth below:

$435,000.00, plus interest at 6% per annum, on the production payment out of 80% of the oil and gas attributable to such one-half interest since March 1, 1959.

1. The bank appraised the present value of the one-half interest in the mineral leasehold at $617,000.00 on December 1, 1961. That was after it had paid approximately

### Malcolm K. Brachman Trust

| Year | Deficiency Determined, Assessed and Paid | Interest Determined, Assessed and Paid | Date of Payment | Total |
|------|------|------|------|------|
| 1960 | $ 223.64 | $ 77.86 | 2/13/67 | $ 301.50 |
| 1961 | 4,148.30 | 1,195.22 | 2/13/67 | 5,343.52 |
| 1962 | 3,146.06 | 717.69 | 2/13/67 | 3,863.75 |

### Marilyn Brachman Hoffman Trust

| Year | Deficiency Determined, Assessed and Paid | Interest Determined, Assessed and Paid | Date of Payment | Total |
|------|------|------|------|------|
| 1960 | $ 9,990.41 | $3,477.89 | 2/13/67 | $13,468.30 |
| 1961 | 9,816.93 | 2,828.48 | 2/13/67 | 12,645.41 |
| 1962 | 28,378.58 | 6,473.81 | 2/13/67 | 34,852.39 |
| 1963 | 9,911.21 | 1,636.57 | 2/13/67 | 11,547.78 |

### Malcolm K. Brachman and Minda Brachman (Joint Returns)

| Year | Deficiency Determined, Assessed and Paid | Interest Determined, Assessed and Paid | Date of Payment | Total |
|------|------|------|------|------|
| 1962 | $28,760.21 | $6,560.87 | 2/8/67 | $35,321.08 |

### Malcolm K. Brachman, Individually

| Year | Deficiency Determined, Assessed and Paid | Interest Determined, Assessed and Paid | Date of Payment | Total |
|------|------|------|------|------|
| 1963 | $ 4,992.72 | $ 539.83 | 2/8/67 | $ 5,532.55 |

### Minda Brachman, Individually

| Year | Deficiency Determined, Assessed and Paid | Interest Determined, Assessed and Paid | Date of Payment | Total |
|------|------|------|------|------|
| 1963 | $ 308.77 | $ 31.23 | 1/28/66 | $ 340.00 |
| 1963 | 5,028.72 | 543.72 | 2/8/67 | 5,572.44 |

### Herman M. Lurie and Miriam S. Lurie (Joint Return)

| Year | Deficiency Determined, Assessed and Paid | Penalty and Interest Determined, Assessed and Paid | | Date of Payment | Total |
|------|------|------|------|------|------|
| | | Penalty | Interest | | |
| 1963 | $ 3,839.59 | $ 41.45 | $ 791.53 | 8/25/67 | $ 4,672.57 |

### Milton Lurie and Ida C. Lurie (Joint Returns)

| Year | Deficiency Determined, Assessed and Paid | Penalty and Interest Determined, Assessed and Paid | | Date of Payment | Total |
|------|------|------|------|------|------|
| | | Penalty | Interest | | |
| 1962 | $10,609.18 | -0- | $2,823.64 | 8/25/67 | $13,432.82 |
| 1963 | 3,802.04 | $ 20.33 | 783.79 | 8/25/67 | 4,606.16 |

[A6618]

Each of the plaintiff taxpayers has met all prerequisites for the filing and maintenance of his action herein for refund of the taxes claimed.

At the time these cases were submitted to the Court, all parties admitted that there were no authorities directly in point on the question involved. While the Court had the matter under study, it was learned that Holbrook v. C. I. R., involving the same question, was before the Court of Appeals for the Fifth Circuit; and decision herein was thereupon withheld pending the disposition of that case. The opinion in the Holbrook case has now been handed down, and motions for rehearing and for rehearing en banc have been denied. Holbrook v. C. I. R., 5 Cir., 450 F.2d 134 (5 Cir., 1971), rehearing and rehearing en banc denied, 451 F.2d 1350. That decision is directly in point on the question now before this Court. The opinion contains a thorough discussion of all the contentions presented to this Court in the present case, and a detailed review of the authorities on the economic interest concept. It applies the rule announced in those cases to an ABC transaction involving a take-out letter. The Holbrook decision dictates the disposition to be made of these cases now before this Court.

As in the cases *sub judice*, the Commissioner made no issue in the Holbrook case over the propriety of reporting income in ABC transactions, as was done by the plaintiffs and Fort Worth Enterprises, Inc., here, where no take-out letter was given the lender. However, the Commissioner contended in *Holbrook*, as he does here, that the take-out letter guaranteeing the loan was a new "twist" which changed the nature of interests created by the transaction.[2] In support of that contention he argued that the take-out letter transferred the ultimate risk of loss in the event of nonproduction from purchaser of the production payment and maker of the note to the obligor in the take-out letter. His conclusion was that such purchaser and maker therefore had no economic interest in the production payment, and that the income attributable thereto should have been reported by the purchaser of the undivided interests from which the production payment was reserved. The Court of Appeals held that the take-out letter did not destroy the economic interest of the original purchaser of the production payment and maker of the note evidencing the loan to get money to buy the payment.

The Holbrook case is so exactly in point with the present cases that extended discussion of its application is not necessary. The only material differences between *Holbrook* and these cases are:

(a) In *Holbrook*, there was no evidence that the party in the position of Fort Worth Enterprises, Inc., here had any financial responsibility. The proof in the present cases shows that Fort Worth Enterprises, Inc., is a corporation of substance.

(b) In *Holbrook*, the taxpayer (original purchaser of the undivided interests) gave the take-out letter. Here, it was S. Brachman,[3] a third party, who had no personal interest in the transaction other than to help his children and other relatives acquire an interest in a fine piece of oil production.

These two differences strengthen the claims of the taxpayers here.

If S. Brachman or someone procured by him had had to step in under the take-out letters and assume responsibility for a part of the loan of the Fort Worth Enterprises, Inc., at the Republic National Bank, he would have had a right of subrogation against the Fort

---

2. 450 F.2d, at p. 136.

3. S. Brachman apparently furnished his credit through the take-out letters to enable his children and other relatives to acquire the one-half interest in a valuable

oil producing property. By reason of the fact that he already owned a fractional undivided interest in the mineral leasehold, he knew something about the potential and value of the production.

Worth Enterprises, Inc., for any loss suffered. The right of subrogation was no sham under the facts of this case.

Fort Worth Enterprises, Inc., had an economic interest in the production payment, and the method of reporting the income in question on the income tax returns of that corporation and of the plaintiffs for the years here involved was proper. Judgment will therefore be entered in favor of each one of the plaintiffs for the amount of income taxes wrongfully assessed and collected, plus interest as provided by law.

This opinion will serve as the Court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.